**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 19, 2018**

# In the Court of Appeals of Georgia

A17A1580. JORDAN v. THE STATE.

A17A1581. JORDAN v. THE STATE.

MᴄMɪʟʟɪᴀɴ, Judge.

Appellants Roderick Jordan and Dennis Alonzo Jordan[1] were tried together before a jury and convicted of armed robbery. Appellants filed separate motions for new trial, which the trial court denied following a hearing. They appeal and argue that the trial court abused its discretion in denying their request for a postponement of the trial after bench warrants were issued in the presence of the prospective jurors. Roderick also contends that the trial court erred by refusing to allow him to recall the victim to testify after he was cross-examined by appellants. Dennis challenges the sufficiency of the evidence to convict him and asserts that the trial court erred by

---

[1] Roderick and Dennis are brothers and will be referred to by their first names for ease of reference.

allowing the State to introduce his prior convictions and in charging the jury on the consideration of this evidence. Having considered these contentions, we now affirm.

Construed to support the jury's verdict,[2] the evidence shows that the victim, was in his apartment on the morning of October 24, 2012. He heard a knock on the door and saw Dennis Jordan, whom the victim knew as "Ike," standing at his door. The victim let Dennis into his apartment and closed but did not lock his door.

As the victim and Dennis were standing in the living room talking,[3] a man wearing a mask partially covering his face suddenly pushed open the door and rushed in. The victim also recognized this man and identified him as Dennis' brother Roderick, whom the victim knew as "Pie." Roderick pulled out a knife and pushed the victim to the floor and held him down while taking money out of his wallet and front pocket. Roderick then jumped off the victim, brandished a hammer, and walked into the kitchen and took an envelope containing $300 off the table. The men then left the apartment together. The victim testified that although Dennis just stood in the

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] The victim testified that Dennis had been in his apartment about 10 or 15 minutes before the other man burst in.

2

living room and did not actively participate in the robbery, Roderick asked Dennis several times "Are you sure you didn't tell him who I was?"

The victim called police, and the crime was investigated by an investigator with the Thomaston Police Department. The investigator interviewed a neighbor, who said he saw two men, fitting the height and weight descriptions of appellants, drive up in a beige or champagne colored Chevrolet and park across the street from the apartment.[4] He observed one of the men get out of the vehicle and walk around to the back of the apartment building, and then a few minutes later the other man got out and went to the trunk of the vehicle, retrieved something from the trunk, and placed it in his pants. This man then also walked around "where the other fellow went" behind the apartment.

Based on the information the victim gave to her, the investigator prepared photographic line-ups containing appellants' pictures.[5] The victim identified

---

[4] Roderick testified at trial on his own behalf and admitted that his girlfriend/ fiancé drove a similarly colored Chevrolet Impala and he and Dennis were together in the vehicle that day, but insisted he had not been in the victim's apartment and had nothing to do with the robbery.

[5] The appellants' pictures were placed in separate line-ups.

appellants from the line-ups, and they were subsequently arrested and charged, and convicted of armed robbery. These appeals followed.

*Case No. A17A1580*

1. Roderick first argues the trial court abused its discretion by refusing to postpone the proceedings until a new jury venire could be convened after appellants failed to timely return to court after lunch and the trial court issued a bench warrant for his arrest in the presence of the prospective jurors.[6]

The record shows that appellants had been instructed to return to court at 1:30 p.m. after the lunch break. Appellants failed to appear, and the trial court indicated during a bench conference that it would issue a bench warrant and bond forfeiture. After the court attended to some unrelated matters, the court again called for the appellants, and the court issued the bench warrant and bond forfeiture in the presence of the prospective jurors.

---

[6] Appellants also apparently assert that the prospective jurors were prejudiced because appellants returned from lunch intoxicated. Although the trial court ultimately postponed the proceedings due to appellants' inability to meaningfully participate in their defense due to their intoxication, this was done outside the presence of the jury and there is nothing to suggest, other than speculation, that the jury was aware that appellants appeared in court while intoxicated.

4

Appellants then entered the courtroom, and the court admonished them that they were supposed to be there at 1:30 p.m. Dennis' counsel objected to the issuance of the warrant in the presence of the venire, and the court indicated it would let her put her objection on the record at a later time. The trial court proceeded to propound the statutory questions, but then Roderick's counsel asked to approach the bench and informed the judge that appellants appeared to be intoxicated. The trial court dismissed the prospective jurors and, after it was determined that appellants were in fact under the influence, ordered them incarcerated and the proceedings continued to another day. The trial court also allowed counsel to perfect her objection about the case going forward before the same potentially prejudiced jurors who had been present when the bench warrant was issued, but refused to continue the proceedings to allow a new venire to be seated.

When prospective jurors who have not been impaneled or sworn are exposed to prejudicial remarks, the prejudiced party has two potential remedies: (1) the more "extreme remedy" of postponement until a new panel of jurors can be impaneled or (2) a challenge to the poll.[7] *Bankston v. State,* 169 Ga. App. 955, 955 (1) (315 SE2d

---

[7] A challenge to the poll is "the proper procedural vehicle to seek a new panel from which to reselect a jury." *Herrington v. State*, 300 Ga. 149, 153 (4) (794 SE2d 145) (2016).

671) (1984); see also *Bell v. State*, 311 Ga. App. 289, 292 (2) (715 SE2d 684) (2011); *Nave v. State*, 171 Ga. App. 165 (318 SE2d 753) (1984).

Here, appellants sought the extreme remedy of postponement, apparently because all of the potential jurors summoned for the week were in the courtroom. However, appellants have failed to show that they were prejudiced by the issuance of the bench warrants. Appellants did not request or attempt to question the prospective jurors about the effect of the issuance of the bench warrants. And none of the potential jurors responded affirmatively to the statutory voir dire questions concerning whether they had formed any opinion concerning the guilt or innocence of appellants, or were prejudiced for or against appellants, and none of them disputed that they were "perfectly impartial." Also, none of the members of the venire gave any other indication that they had been prejudiced by the issuance of the warrants or bond forfeiture against appellants. Further, appellants did in fact appear in court shortly after the bench warrants were issued, and the prospective jurors knew they had simply been late returning from lunch and had not in fact failed to appear. Under these circumstances, and in the absence of any showing of possible prejudice, we find no abuse of discretion in the denial of the request for a postponement or continuance.

2. Roderick also argues the trial court erred when it denied his request to recall the victim to testify during his case-in-chief.

The record reflects that the State called the victim to testify, and Roderick's counsel conducted a cross and re-cross examination after the State concluded its direct examination. The State rested at that point, and Roderick's counsel requested that the victim be available for recall. After Roderick testified, his counsel requested that the victim be recalled for the purpose of impeachment. The trial court denied the request, noting that the victim had just been thoroughly cross-examined.

Pointing to OCGA § 17-16-10, Roderick argues that he had an absolute right to call the victim to testify and that he is entitled to a new trial because he was denied that right. We disagree. OCGA § 17-16-10 provides: "[e]ither party may call as a witness any person listed on either the prosecuting attorney's or defendant's witness list[.]" But OCGA § 17-16-10 does not allow witnesses to be recalled at trial as a matter of right and for any reason whatsoever. Instead, OCGA § 24-6-611 (a) gives the trial court reasonable control over the mode and order of interrogating witnesses.[8]

---

[8] OCGA § 24-6-611 provides:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to: (1) Make the

7

See *Farley v. State*, 314 Ga. App. 660, 665 (4) (725 SE2d 794) (2012) (trial court has power to deny recall of witnesses who had already been thoroughly cross-examined by defendant); *Smith v. State*, 261 Ga. App. 871, 875 (3) (583 SE2d 914) (2003) ("The recalling of a witness for further examination at the instance of either party is always within the discretion of the trial judge.") (citation and punctuation omitted). Here, when Roderick's counsel asked for the victim to be recalled, he only explained that it was for "impeachment purposes," without further elaboration. Because the record shows that Roderick was given ample opportunity to question the witness and has made no showing as to the specific impeachment matter he was allegedly prevented from pursuing, he has failed to show an abuse of discretion and is not entitled to a new trial on this basis. Cf. *Webb v. State*, 300 Ga. App. 611 (685 SE2d 498) (2009) (reversal error when trial court refused to allow defendant to call a witness listed on the State's witness list solely because the witness was not also listed on the defendant's list).

interrogation and presentation effective for the ascertainment of the truth; (2) Avoid needless consumption of time; and (3) Protect witnesses from harassment or undue embarrassment.

3. Dennis first challenges the sufficiency of the evidence to support his conviction. Although Dennis testified in his own defense at trial and told the jury that he was merely present at the scene and actively tried to discourage the robber, the jury was authorized to disbelieve his testimony. And although mere presence is insufficient to show participation in a crime, whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed. *Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998). The evidence as set out above, including evidence that appellants arrived at the scene together and Roderick questioned his brother at the scene in an implicating manner, was more than sufficient to authorize Dennis' conviction as a party to the crime of armed robbery. E.g., *Puckett v. State*, 342 Ga. App. 518, 522 (1) (804 SE2d 648) (2017).

4. Dennis also contends that the trial court erred by refusing to grant a postponement because the jury was prejudiced when the trial court issued a bench warrant for his arrest. For the reasons set out in Division 1, we find this enumeration to be without merit.

5. Dennis next argues that the trial court erred by allowing the State to introduce his prior convictions for burglary and theft for the purposes of impeachment. Read in conjunction, subsections (a) (1) and (b) of OCGA § 24-6-609 provide that prior felony convictions less than ten years old may be introduced for the purpose of attacking the character for truthfulness of a witness if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect.[9]

> The introduction of evidence of a prior felony conviction is intended to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness.

(Citation omitted.) *Robinson v. State* 336 Ga. App. 627, 631 (3) (785 SE2d 304) (2016). We review the trial court's decision to admit this evidence under an abuse of

---

[9] We note that subsection (a) (1) of OCGA § 24-6-609 applying to prior crimes of the accused, which are less than ten years old, does not require the probative value of admitting the prior crime "substantially" outweigh its prejudicial effect, as was the case under the prior law and is presently the case under subsection (b) of OCGA § 24-6-609, which applies when the prior crime is more than ten years old. *Williams v. State*, 299 Ga. 834, 836 (2), n.2 (792 SE2d 336) (2016).

10

discretion standard. Id.; *Smith v. State*, 331 Ga. App. 296, 299, 300 (2) (771 SE2d 8) (2015).

Here, as the trial court found, Dennis placed his credibility directly at issue by testifying at trial that he took no part in the armed robbery and that he actually tried to discourage the robber by telling him that the victim did not have anything to take. Further, Dennis had already admitted that he had a criminal past and said he was at the victim's apartment to collect money for a drug sale and to sell him more drugs, and thus the jury did not learn that he was a criminal solely from the admission of the evidence. Lastly, although Dennis argues that the evidence could permit the jury to improperly draw inferences that he had an inclination or propensity to commit theft crimes instead of limiting the prior crimes evidence to its stated purpose of impeachment, under these circumstances, we find no abuse of discretion in the trial court's determination that the probative value outweighed its prejudicial effect and in admitting the prior crimes for the purpose of generally attacking Dennis' credibility. *Robinson* 336 Ga. App. at 630-31 (3); *Smith*, 331 Ga. App at 299-300 (2).

6. Lastly, Dennis argues that the trial court committed plain error by charging the jury that it consider the prior convictions for "any relation that they may have with the alleged victim in this case." But the full charge was as follows:

11

In determining the credibility of witnesses and any testimony provided in court, you may consider whether applicable evidence offered to attack the credibility or believability of any witness. This would include evidence of a felony conviction, and that would include felony theft by taking or burglary charges or drug charges or possession of cocaine....

There has been evidence of prior convictions of the defendants. You may consider this evidence only insofar as it may relate to credibility of the defendants as witnesses and any relation they may have with the alleged victim in the case.

Because Dennis did not object to the charge, we are limited to review for plain error. E.g., *State v. Kelly,* 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011). "[W]e will reverse the trial court only if an instructional error was not affirmatively waived, was obvious beyond dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Herrington v. State*, 300 Ga. 149, 151 (2) (794 SE2d 145) (2016); *Ferguson v. State*, 335 Ga. App. 862, 870 (3) (783 SE2d 380) (2016).

Dennis asserts that the charge was plain error because the reference to "any relation they may have with the alleged victim in the case" could have permitted the jury to consider whether the prior convictions, rather than the appellants, had any relationship to the victim. Although the antecedent to the pronoun "they" is not clear

12

and may have referred to either the appellants or the prior convictions, when the charge is read as a whole as it must be, any error was not so obvious or clear as to likely affect the outcome of the proceedings, especially in light of the strong evidence of Dennis' guilt. *Avelo v. State*, 290 Ga. 609 613-14 (5) (724 SE2d 377) (2012). Accordingly, we decline to grant Dennis a new trial on this basis.

*Judgments affirmed. Barnes, P. J., and Mercier, J., concur.*